THE O'DONNELL & DUER BAVARIAN BREWING COMPANY

*v.*

LEANDER C. FARRAR *et al.*

*Filed at Ottawa November 9, 1896.*

1. FRAUD—*what representations as to the value of a business constitute fraud.* Representations by the seller that a saloon was doing a profitable business and that the income therefrom was twenty dollars a day are material, and if false, a purchaser relying upon them may rescind the sale.

2. SAME—*party seeking to rescind for fraud must act promptly.* A party seeking to rescind a contract for fraud must act promptly on discovering the facts, and if the other party refuses to rescind he must do no act which admits the validity of the contract.

3. SAME—*what acts do not amount to waiver of right to rescind contract.* The right to rescind the purchase of a saloon for fraud of the seller is not waived by delay of two months, during which the buyer was making continuous efforts to compromise with the seller.

*O'Donnell & Duer Brewing Co.* v. *Farrar,* 62 Ill. App. 471, affirmed.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. THEODORE BRENTANO, Judge, presiding.

This is a bill by appellees, husband and wife, against appellant, to rescind a contract and set aside certain judgments. In August, 1894, they purchased from the appellant brewing company a certain saloon stock and fixtures in the city of Chicago, agreeing to pay therefor $1100. Of the consideration $400 was paid in cash, and two notes were given for the remainder,—one for $600, due in thirty days, and the other for $100, due in one year. Both notes were secured by a chattel mortgage on the property purchased, the mortgage containing the usual clauses giving the mortgagee the right to take possession upon a failure to pay the notes when due or if it should feel insecure, etc. At the same time appellees entered into a contract for a lease of the premises in

163   471
 88a  492
163   471
f188  ²248
163   471
96a  ³163

which the saloon was kept, from the date of the purchase to April 30, 1897, agreeing to pay a rental of $200 per month, with a proviso that they should have a rebate of $100 a month if they bought all their beer from the appellant company. The lease contained a clause giving the lessor the right to take possession and re-let the premises if the same should be abandoned by the lessees, on such terms as it might deem expedient, such re-letting not to operate as a waiver of any right which the lessor would otherwise have to hold the lessees responsible for the rent reserved. Appellees went into possession of the property in June, 1894, and conducted the saloon business until the 29th of September following, when they abandoned the business and premises, tendering the keys to appellant, which it refused. On that day the $600 note fell due, and on the 8th of August following, appellant caused a judgment to be entered up for the amount of $764.68, being the amount of the principal and interest then due on the note and $50 attorney's fee. On the 13th of October, that judgment remaining unsatisfied, appellant took possession of the saloon fixtures and stock of goods under the mortgage, advertised the property for sale, and sold it for $500, crediting the amount upon appellees' indebtedness. On January 1, 1895, it re-let the premises for a rental of $75 per month for the remainder of the term for which it had leased them to appellees. During the time appellees conducted the saloon they became indebted to appellant in the sum of $187 for beer sold and delivered to them, and that amount remains unpaid.

LACKNER & BUTZ, for appellant:

The allegation of fraud being against the presumption of honesty, it requires stronger proof than if no presumption existed. Bump on Fraudulent Con. 603; *Schroeder* v. *Walsh*, 120 Ill. 409.

As a general rule, representations as to mere value, although known to be false, will not constitute fraud. *Merwin* v. *Arbuckle*, 81 Ill. 502.

It is necessary that the defrauded party should do nothing after the discovery of the fraud which would in any way admit the existence and validity of the contract. Tiedeman on Sales, sec. 163.

Where a party desires to rescind upon the ground of mistake or fraud, he must, upon discovery of the facts, announce at once his purpose and adhere to it.    *Grymes* v. *Saunders*, 93 U. S. 55.

WILLIAM R. BURLEIGH, for appellees:

The recent cases decided in this court bearing on the question at issue are *Greenwood* v. *Fenn*, 136 Ill. 158, *Brown* v. *Brown*, 142 id. 428, and *Day* v. *Fort Scott Improvement Co.* 153 id. 304, and the language of the decisions is quoted from *Grymes* v. *Saunders*, 93 U. S. 55.

In the following cases the equities make strongly in favor of allowing the contract to be rescinded:    *Williamson* v. *Railway Co.* 29 N. J. Eq. 319; *Tarkington* v. *Purvis*, 128 Ind. 182; *Wicks* v. *Smith*, 21 Kan. 302; *Clough* v. *Railway Co.* L. R. 7 Exch. 26; *Pierce* v. *Wilson*, 34 Ala. 596; *Montgomery* v. *Pickering*, 116 Mass. 227; *Nealon* v. *Henry*, 131 id. 153; *Pratt* v. *Philbrook*, 41 Me. 132; *Gatling* v. *Newell*, 9 Ind. 572; *Warren* v. *Tyler*, 81 Ill. 15; *Marston* v. *Simpson*, 54 Cal. 189; *Neblett* v. *McFarland*, 92 U. S. 101.

Each case involving the defenses of delay or lapse of time must, to a great extent, depend upon its own circumstances.    Pomeroy's Eq. Jur. sec. 965.

Mr. JUSTICE WILKIN delivered the opinion of the court:

On the first day of October, 1894, appellees filed this bill, alleging that they were induced to enter into the contract of purchase, and the lease, through the fraudulent representations of appellant, the allegation being: "For the purpose of inducing complainants to purchase a

saloon and take a lease thereof, represented that the saloon was first-class in every respect and was well fitted up; was doing a fine and profitable business, which was mostly glass trade; that the income was $20 a day, and that the net profit would be $4000 in two years; that the only reason for the sale was the ill-health of the manager's wife;" that relying upon such representations the purchase was made and a lease entered into; that said representations were false; that complainants, learning that fact, offered to return to the defendant the saloon and property, provided defendant would release them from the obligations of the lease. The answer denies all the allegations of fraud. On the hearing of the cause, the witnesses being examined in open court, a decree was rendered according to the prayer of the bill, ordering the defendant to surrender up the lease, releasing all claim on complainants for rent, vacating and setting aside the judgment of $764.68, ordering the defendant to release to complainants all claim for the $187.30 indebtedness for beer, as above stated, and also ordering it to repay to the complainants the sum of $500, being the $400 cash payment and the $100 rent paid. On appeal to the Appellate Court that decree was affirmed, except as to the order in regard to the $187.30 indebtedness for beer, which was reversed, and the appellant now prosecutes this appeal.

It is insisted by appellant that the decree below is erroneous for three reasons: First, that the evidence fails to show that the alleged false representations were made; second, that there is no proof of the falsity of any representation which in law entitles the complainants to rescind the contract; and third, conceding complainants to be otherwise entitled to the relief prayed, they have waived any right to rescind the contract by failing to take steps to do so promptly upon the refusal of the defendant to consent to the rescission.

As to the first question there is a direct and positive conflict between the parties as to the representations set

up in the bill, complainants testifying that they were made and induced the purchase, whereas two members of the defendant company testify to the contrary. The circuit court saw the witnesses and heard them testify, and found the facts against the defendant. That finding having been affirmed by the Appellate Court, we do not feel inclined to a contrary conclusion.

As to the second question, it is undoubtedly true that some of the representations set up in the bill amount to no more than the expression of an opinion as to the value of the property and business or a recommendation of the property of the seller. Certainly, whether the saloon was first-class in every respect and was well fitted up were matters about which the purchasers could judge as well as the seller, and whether the business would yield a profit of $4000 in two years was the expression of an opinion, which the law would not treat as fraudulent. On the other hand, that the saloon was doing a profitable business, mostly glass trade, and especially that the income was $20 per day, were statements of fact which, if false, (as they were found to be by the court below,) would entitle the complainants, upon discovery of the real facts, to a rescission of the contract. *Allin* v. *Millison*, 72 Ill. 201; *Hicks* v. *Stevens*, 121 id. 186.

The third question is one which must be disposed of as a mixed question of law and fact. It is undoubtedly the law that if a party seeks to rescind a contract on account of fraud he must act promptly, and, upon a refusal of the other party to acquiesce in the rescission, do no act which will amount to treating the contract as valid, —as, for instance, a party attempting to declare a rescission of the contract, who afterwards exercises acts of ownership over the subject matter of the contract, treating it as his own, will be held to have waived his right to rescind. "In order that this effect may be produced, the acquiescence must be with knowledge of the wrongful acts themselves and their injurious consequences. It

must be voluntary,—not the result of accident,—and it must last for an unreasonable length of time, so that it will be inequitable, even to the wrongdoer, to enforce the peculiar remedies of equity against him after he has been suffered to go unmolested and his conduct apparently acquiesced in." 2 Pomeroy's Eq. sec. 817.

Under this rule of law counsel for appellant contend, that after complainants offered to return the keys to the defendant, and it refused to receive them, they continued to carry on business in the property, and thereby waived any right which they had at the time of the offer to return the keys and rescind the contract. If there were no other facts connected with the transactions between the parties this position would be well taken. The evidence, however, shows that continued efforts were made by the complainants to bring about an adjustment and settlement of the matters in dispute. We think it is fairly inferable, from all the testimony, that the complainants did not determine definitely to rescind the contract until about the time of bringing this suit, and that their previous conduct, after discovering the alleged fraud, was not such as should estop them from insisting upon it as they did in their bill.

It is quite clear that the order of the circuit court releasing complainants from their indebtedness to defendant for beer purchased during the conduct of the business was erroneous, both because no claim of that kind was made in the bill and because that transaction was wholly independent of the contract, which it is claimed was induced by fraud.

We find no reversible error in the record. The judgment of the Appellate Court must be affirmed.

*Judgment affirmed.*